## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEBTBLUE, LLC, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| THE UNITED STATES SMALL | § | |
| BUSINESS ADMINISTRATION; | § | |
| ISABELLA CASILLAS GUZMAN, IN | § | |
| HER OFFICIAL CAPACITY AS | § | |
| ADMINISTRATOR OF THE SMALL | § | |
| BUSINESS ADMINISTRATION; | § | |
| JANET YELLEN, IN HER OFFICIAL | § | |
| CAPACITY AS UNITED STATES | § | |
| SECRETARY OF TREASURY, | § | |
|     *Defendants*. | § | |

### PLAINTIFF DEBTBLUE, LLC'S ORIGINAL COMPLAINT

Plaintiff DebtBlue, LLC (DebtBlue) files this Complaint against Defendants United States Small Business Administration (SBA), Isabel Casillas Guzman, in her official capacity as Administrator of the SBA (Administrator Guzman), and Janet Yellen, in her official capacity as United States Secretary of Treasury (Secretary Yellen) (collectively referred to as Defendants).

1

**PRELIMINARY STATEMENT**

This is an appeal of the SBA's denial of DebtBlue's request for forgiveness of its second Paycheck Protection Program (PPP) loan. DebtBlue is the type of business the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116-136) sought to support and protect. Founded in 2018 by small business owner Corey Butcher, DebtBlue assists individuals and families get back on their feet financially, by reducing the principal portion of their debt, such as credit card debt, department store bills, and medical bills. When the COVID-19 pandemic began, DebtBlue was severely financially affected, struggling to keep its qualified employees paid.

DebtBlue applied for and received a Second Draw PPP Loan on February 14, 2021 (Second Draw PPP Loan). Without this loan, DebtBlue would not have been able to operate its business and pay its employees. Then, on May 7, 2022, DebtBlue executed a PPP Loan Forgiveness Application (Form 3508EZ) requesting forgiveness of the full amount of the Second Draw PPP Loan.

The SBA, however, denied forgiveness of the Second Draw PPP Loan, finding DebtBlue "ineligible" because "[a]fter review of the documentation provided . . . [DebtBlue] did not meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020." The SBA reasoned DebtBlue failed to provide documentation on "returns and allowances," which are allowed to be deducted from gross profits in order to calculate gross receipts. Although the SBA never sought documentation for returns

2

and allowances, DebtBlue provided its financial records that show it did meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020, and it was eligible for the Second Draw PPP Loan and forgiveness of same.

DebtBlue followed each and every regulation in effect at the time of its loan application and relied on the guidance of its advisor and the SBA; yet, DebtBlue is (as it stands) now required to pay back the $1,144,417.00 Second Draw PPP Loan *with interest.* Defendants' acts are arbitrary, unlawful, and unjust and have caused significant harm to a small business in the Dallas community. Accordingly, DebtBlue respectfully requests this Court issue a declaration that the SBA's actions were arbitrary, capricious, unlawful and an abuse of discretion, vacate the underlying agency actions, and direct full forgiveness of DebtBlue's Second Draw PPP Loan.

### STATEMENT OF PARTIES IN INTEREST

1.      Plaintiff DebtBlue is a limited liability company duly organized and authorized to conduct business in the State of Texas. DebtBlue, LLC is located at 15455 Dallas Pkwy, Suite 1250, Addison, TX 75001, which is located in Dallas County, Texas.

2.      Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. 633 § *et. seq.* Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP. The SBA maintains a branch office at 150 Westpark Way, Suite 130, Euless, TX 76040-3705, which is within the Fort Worth Division of the Northern District of Texas.

3.      Defendant Administrator Guzman is the Administrator of the SBA, a Cabinet-level position, and is sued only in her official capacity. Because she is an officer with the final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the Administrative Procedure Act (APA).

4.      Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

5.      Defendant Secretary Yellen is the United States Secretary of Treasury, a Cabinet-level position, and is sued only in her official capacity. Yellen assists in the administration of the PPP, and funds supporting the PPP are appropriated through the Treasury. *See* 15 U.S.C. § 9006(a).

6.      Plaintiff currently does not seek monetary relief and seeks only to restrain the actions of Administrator Guzman and Secretary Yellen in each of their official capacities and request only declaratory and injunctive relief under 5 U.S.C. § 701, *et seq.*, in order to restrain the actions of the SBA, Administrator Guzman, and Secretary Yellen in each of their official capacities.

**STATEMENT OF JURISDICTION**

7. This action arises out of the arbitrary, capricious, and clear error of facts and law in (a) the Final SBA Loan Review Decision, issued on January 24, 2024, determining DebtBlue was ineligible for its Second Draw PPP Loan (Loan Review Decision), (b) the initial decision issued by the Office of Hearing and Appeals (OHA) on July 1, 2024, denying DebtBlue's appeal of the Final SBA Loan Review Decision (Initial Decision), and (c) the OHA Decision of Appellant's Petition for Reconsideration, issued on August 6, 2024 (Final Decision).

8. Jurisdiction is proper under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States, namely the CARES Act and the APA. As detailed above, Congress enacted the CARES Act to increase eligibility and to make PPP loans available to any business concern. The SBA later restricted those businesses eligible for receipt of PPP loans through an Interim Final Rule (IFR) published in the Federal Register on January 14, 2021.

9. Venue is proper in the United States District Court for the Northern District of Texas, Dallas Division, under 28 U.S.C. § 1391(e) as DebtBlue's primary place of business and the PPP loan proceeds are located in Dallas, Texas.

10. The SBA's review and denial of DebtBlue's appeal through the OHA became final on August 6, 2024, thirty days after service of the Final Decision. 13 C.F.R. § 134.1211(g).

11.     DebtBlue is entitled to judicial review of the Final Decision. 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."); § 134.1211(g) ("*Appeal to Federal district court.* Final decisions may be appealed to the appropriate Federal district court only.") (emphasis in original).

## STATEMENT OF FACTS

**A.     The CARES Act and PPP Rules and Regulations**.

12.     Congress passed the CARES Act to counteract the economic turmoil caused by the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020). On March 27, 2020, the CARES Act was enacted to protect Americans employed by small businesses. Part of the CARES Act included the PPP, which provided the SBA with the funding and authority to operate a loan program designed to assist small businesses with their cash flow during the COVID-19 pandemic. *See id.* § 1102; 15 U.S.C. § 636.

13.     Section 1102(a) of the CARES Act established the PPP as a temporary expansion of SBA's pre-existing business loan authority by adding a new paragraph – Paragraph 36 - to Section 7(a), 15 U.S.C. § 636(a)(36). Ultimately, the PPP was not a standalone program but instead was added into the SBA's "Section 7(a) loans," with several of that subsection's general eligibility requirements relaxed. CARES Act, § 1102, 134 Stat. at 286 (amending § 7(a)).

14.     Generally, the PPP was open to all American small businesses with 500 or

6

fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

15. On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venus Act (Economic Aid Act) was enacted. Pub. L. 116-260. The Economic Aid Act reauthorized lending under the PPP through March 31, 2021, adding a new temporary section to the Small Business Act, authorizing the SBA to guarantee additional PPP loans to eligible borrowers under generally the same terms and conditions available under section 7(a)(36) of the Small Business Act, through March 31, 2021.

16. A borrower would be generally eligible for a second PPP loan if the borrower: (1) previously received a PPP loan and will or has used the full amount for authorized uses; (2) has no more than 300 employees; and (3) can demonstrate at least a 25% reduction in gross receipts under comparable quarters in 2019 and 2020. (Business Loan Program Temporary changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3717, et seq. (Jan. 14, 2021).)

17. Ultimately, the goal of the CARES Act was to "keep American workers paid and employed" and to "assist small businesses nationwide adversely impacted by the COVID-19 emergency." Subchapter I; *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020). *See* SBA, Business Loan Program Temporary Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20,811, 20,811-12 (Apr. 15, 2020) (First PPP IFR).

18.     The CARES Act specifically amended "Section 7(a) of the Small Business Act (15 U.S.C. § 636(a))," to create a new class of 7(a) loans, *i.e.*, PPP loans, with their own specific rules and requirements.  15 U.S.C. § 636(a). For PPP loans, the CARES Act streamlined the requirements of the "regular 7(a) loan program," including for example, relieving SBA lenders from having to comply with the SBA regulations at 13 CFR § 120.150 and to "allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness." 85 Fed. Reg. 20812.

19.     Congress charged the SBA with "modify[ing] existing loan programs and establish[ing] a new loan program to assist small businesses nationwide." *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020). It also directed that the SBA "guarantee" PPP loans from private lending institutions to eligible small businesses. *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745 (6th Cir. 2020).

20.     The CARES Act provides that "***any business concern*** . . . shall be eligible to receive a covered loan," as long as the business concern does not employ more than a specific number of employees (for first draw loans, 500 employees). 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added); *see id.* § 636(a)(36)(D)(i)(I)–(II). By this language, the CARES Act mandates a "broad grant of eligibility." *DV Diamond Club*, 960 F.3d at 747.

21.   In the rush to get money into the hands of small business owners, the PPP (a) placed the impetus on borrowers and lenders participating in the PPP to certify eligibility for the program and loan calculations in the midst of constantly changing guidance; and (b) as such, SBA guidance has consistently provided that "Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application." (PPP Frequently Asked Questions, as of May 9, 2024, at Question 17.)[1]

22.   The SBA later issued an IFR on January 14, 2021, codified in 86 FR 3712 at 3713, that contained additional guidelines for Second Draw PPP loans:

> The Economic Aid Act generally provides that a borrower is eligible for a Second Draw PPP Loan only if it has 300 or fewer employees and experienced a revenue reduction in 2020 relative to 2019 (described further below). In addition, the Economic Aid Act provides that a Second Draw PPP Loan may only be made to an eligible borrower that (i) has received a First Draw PPP Loan, and (ii) has used, or will use, the full amount of the First Draw PPP Loan on or before the expected date on which the Second Draw PPP Loan is disbursed to the borrower.
>
> ***
>
> The Economic Aid Act provides that, to be eligible for a Second Draw PPP Loan, the borrower must have experienced a revenue reduction of 25% or greater in 2020 relative to 2019. A borrower must calculate this revenue reduction by comparing the borrower's quarterly gross receipts for one quarter in 2020 with the borrower's gross receipts for the corresponding quarter of 2019.

---

1 Available at https://www.sba.gov/documents.

**B.      DebtBlue receives a Second Draw PPP Loan in the amount of $1,114,417.00.**

23.      DebtBlue is a small debt resolution company located in Addison, Texas. DebtBlue is the type of business the CARES Act sought to support and protect. Founded in 2018 by small business owner Corey Butcher, DebtBlue assists individuals and families get back on their feet financially, by reducing the principal portion of their debt, such as credit card debt, department store bills, and medical bills.

24.      When the COVID-19 pandemic began, DebtBlue was severely financially affected, struggling to keep qualified employees paid.

25.      DebtBlue applied for a Second Draw PPP Loan on February 14, 2021. (AR1 at 180-182.)[2] During the Loan Application process, DebtBlue was advised by its banking advisors that gross receipts were total income less the cost of goods sold. DebtBlue initially relied on that guidance in submitting its loan application and in calculating the required 25% reduction.

26.      The Second Draw PPP loan application was approved, and $1,144,417.00 was disbursed to DebtBlue by a PPP-approved lender on February 21, 2021, under SBA loan number ending in 8409. (AR1 at 188.) Without this Second Draw PPP Loan, DebtBlue would not have been able to operate its business and pay its employees.

---

[2] In regard to administrative record citations, "AR1" is a reference to Part One of the Administrative Record, and "AR2" is a reference to Part Two of the Administrative Record.

**C.**    **After a review of the loan, the SBA issues a Final SBA Loan Review Decision, on January 24, 2024, determining DebtBlue was not eligible for its Second Draw PPP Loan (Loan Review Decision).**

27.    On May 7, 2022, DebtBlue executed a PPP Loan Forgiveness Application (Form 3508EZ) requesting forgiveness of the full amount of the Second Draw PPP Loan. (AR1 at 189-190.)

28.    Soon thereafter, the SBA informed DebtBlue it was undertaking a review of the Second Draw PPP Loan. Under the review process, the SBA requested DebtBlue to provide documents showing: (a) 2019 and 2020 payroll documents that demonstrate qualifying average monthly payroll costs; (b) payroll documentation, non-payroll documentation, and full-time equivalent employee documentation; (c) a signed and certified transcript of account; (d) a copy of the executed note evidencing the PPP loan; (e) a signed copy of the appropriate SBA Form 3508; and (f) any memorandum or other analysis that the lender prepared in making its decision on borrower's Loan forgiveness application. The SBA also requested 2018 and 2019 tax returns for DebtBlue. (AR1 at 172-173.)

29.    DebtBlue submitted to the SBA the requisite information, including tax returns for the years 2018, 2019, and 2020, among other financial documents and information, such as bank statements and profit and loss statements. Therein, among other details, DebtBlue showed it previously received a First Draw PPP Loan, the loan proceeds were used for authorized purposes, it only had 76 employees, and it suffered a

11

greater than 25% reduction in gross receipts between comparable quarters in 2019 and 2020. (AR1 at 42-171, 209-290, 294-313, 317-331, 422-688, 691-747.)

30.     Moreover, within DebtBlue's financial documents, DebtBlue provided company adjustments which include returns and allowances and prove that it met the 25% threshold. (AR2 at 82, attached here to as **Exhibit 1**.)

|  | **Q2 2019** | **Q2 2020** | **Difference** | **Percentage** |
|---|---|---|---|---|
| **Total Income** | $ 3,169,453.80 | $ 2,444,491.20 | $ (724,962.60) | -22.87% |
| **Returns/Allow** | $ 39,550.61 | $ 141,340.43 | | |
| **Gross Receipts** | $ 3,129,903.19 | $ 2,303,150.77 | $ (826,752.42) | -26.41% |

31.     On June 21, 2023, and September 13, 2023, the SBA issued preliminary loan review decisions determining that DebtBlue was ineligible for the Second Draw PPP loan for various (and arguably newfound) reasons. (AR1 at 29-34.) DebtBlue promptly responded on July 31, 2023, and October 12, 2023, to the respective preliminary loan review decision addressing the issues raised in those decisions. In each response, DebtBlue provided additional information as necessary to correct the SBA's misunderstandings or misinterpretation of DebtBlue's financial information and the underlying issues. (AR2 at 4712-4740.)

32.     On January 16, 2024, the SBA issued its Final SBA Loan Review Decision, determining that DebtBlue was not eligible for its Second Draw PPP loan. The SBA denied forgiveness of the Loan solely because "[a]fter review of the documentation provided . . . [DebtBlue] did not meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020." (AR1 at 26-28.) The SBA concluded that DebtBlue

"used an incorrect methodology when calculating their reduction in gross receipts." (AR1 at 26-28.) The apparent reason was that in calculating gross receipts borrowers were allowed to subtract returns and allowances but not costs of goods sold. Despite the SBA never seeking any such documentation on returns and allowances, DebtBlue's financial records did provide the necessary information to correctly calculate the more than 25% reduction in gross receipts suffered by DebtBlue. (*Supra* ¶¶ 29–30.)

**D.     DebtBlue initiates an administrative appeal of the Final SBA Loan Review Decision, and the OHA issues an initial decision on July 1, 2024, denying DebtBlue's appeal (Initial Decision).**

33.     On February 16, 2024, DebtBlue initiated an administrative appeal of the Final SBA Loan Review Decision, therein providing additional financial information and again addressing the SBA's misunderstanding or misinterpretation of DebtBlue's financial information and the underlying issues. The SBA submitted its response on June 6, 2024.

34.     On July 1, 2024, Administrative Judge Gary Smith issued an initial decision denying DebtBlue's appeal of the Final SBA Loan Review Decision. The Initial Decision (incorrectly) concludes that DebtBlue improperly deducted costs of goods sold from total income in calculating gross receipts. (Initial Decision at 14.)

35.     The Initial Decision further concludes DebtBlue relied on "its quarterly Profit and Loss Statements, [which] incorrectly subtracted "Total Adjustments" (i.e., Costs of Goods Sold) from the "total Income" (*i.e.*, Gross Receipts), prior to comparing its

2019 second quarter gross receipts with its 2020 second quarter gross receipts. By subtracting its Costs of Goods Sold from its Total Income [DebtBlue] was actually comparing its 2019 and 2020 second quarter gross profit amounts." (Initial Decision at 14.)

36.     The Initial Decision also noted that the financials were not signed and initialed on every page (Initial Decision at 14); an issue that, notably, was not raised by the SBA until after DebtBlue submitted its administrative appeal. Nonetheless, as discussed in more detail below, DebtBlue complied with the pro forma rule attaching a signed and initialed version of the pertinent financials. DebtBlue also included a detailed breakdown of its returns and allowances confirming what was provided in the original financials received by the SBA—that is, DebtBlue's gross receipts sufficiently decreased to meet the threshold required for forgiveness.

**E.     DebtBlue files a petition for reconsideration of OHA's Initial Decision, and the OHA issues its Decision of Appellant's Petition for Reconsideration (Final Decision), denying the petition.**

37.     On July 11, 2024, under 13 C.F.R. § 134.1211(c), DebtBlue filed a petition for reconsideration of the OHA's Initial Decision. (financial statement attached to DebtBlue's Petition for Reconsideration of OHA's Initial Decision, filed July 11, 2024, attached hereto as **Exhibit 2**.) In the petition, DebtBlue showed that separating out returns and allowances from the costs of good sold figure, DebtBlue still meets the threshold of a 25% reduction in gross receipts between Q2 2019 and Q2 2020.

14

38.     Specifically, the total income for Q2 2019 was $3,169,453.80 and Q2 2020 was $2,444,491.20, representing a 22.9% reduction; however, the returns and allowances were $1,950.50 for Q2 2019 and $141,340.43 for Q2 2020. In that regard, DebtBlue further explained that when returns and allowances are deducted from total income to calculate gross receipts, 86 FR 3712 at 3717, the gross receipts for Q2 2019 was $3,167,503.30 and Q2 2020 was $2,303,150.77, representing a 27.3% reduction.

|  | Q2 2019 | Q2 2020 | Difference | Percentage |
|---|---|---|---|---|
| Total Income | $ 3,169,453.80 | $ 2,444,491.20 | $ (724,962.60) | -22.87% |
| Returns/Allow | $        290.00 | $    140,188.04 |  |  |
| Gross Receipts | $ 3,169,163.80 | $ 2,304,303.16 | $ (864,860.64) | -27.29% |

Based on financial statements from Ex. 2.

39.     Accordingly, DebtBlue exceeded that threshold and the holding that DebtBlue did not do so is a clear error of fact that should result in the grant of DebtBlue's appeal of the SBA's Final SBA Loan Review Decision. (Petition for Reconsideration at 4.)

40.     The SBA filed its response to the Petition for Reconsideration on July 26, 2024, essentially regurgitating the same arguments in its prior submissions. On August 2, 2024, DebtBlue submitted a reply in support of the Petition for Reconsideration addressing the misplaced and newly raised arguments in the SBA's response.

41.     On August 6, 2024, the OHA issued its Final Decision, therein refusing to consider the additional financial data and clarification provided by DebtBlue and concluding that DebtBlue "failed to prove that the Initial Decision was based upon a clear error of fact or law." The OHA denied DebtBlue's Petition for Reconsideration.

42.     Despite the authority and discretion to do so, Administrator Guzman did not unilaterally elect to review or reverse the OHA's Initial Decision or Final Decision; therefore, this proceeding became ripe and necessary.

## STANDARD OF REVIEW

43.     Pursuant to the APA, 5 U.S.C. §§ 701-706, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be . . . (A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

44.     Section 704 of the APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The OHA Decision of Appellant's Petition for Reconsideration, issued on August 6, 2024, meets the requirements of final agency action subject to review.

45.     The "court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). However, a "court must satisfy itself that the agency 'considered the relevant factors and explained the facts and policy concerns on which it relied, and [that] those facts have some basis in the record.'" *Larry Grant Const. v. Mills*, 956 F.Supp.2d 93 (D.D.C. 2013) (quoting *Nat'l Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C.Cir. 1988)).

16

## COUNT ONE

**Claim to Set Aside Agency Action that is Arbitrary and Capricious
and an Abuse of Discretion under 5 U.S.C. § 706(2)(A)**

46.     DebtBlue incorporates all foregoing factual allegations as if set forth verbatim herein.

47.     The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

48.     On January 14, 2021, as part of the IFR, the SBA made effective the eligibility requirements for a Second Draw PPP Loan. The Rule provided that DebtBlue must have: (a) previously received a First Draw; (b) will or has used the full amount for authorized uses; (c) has no more than 300 employees; and (d) can show at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. DebtBlue satisfied those requirements.

49.     On appeal, the only source of dispute and the basis for the Final Decision was whether DebtBlue can show at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

50.     Here, DebtBlue's total income for Q2 2019 was $3,169,453.80 and Q2 2020 was $2,444,491.20, representing a 22.9% reduction; however, the returns and allowances were $1,950.50 for Q2 2019 and $141,340.43 for Q2 2020. When returns and allowances are

deducted from total income to calculate gross receipts, the gross receipts for Q2 2019 were $3,167,503.30 and Q2 2020 was $2,303,150.77, representing a 27.3% reduction.

51.     Defendants' actions in refusing to approve DebtBlue's PPP Loan Forgiveness Application requesting forgiveness of the full amount of the Second Draw PPP Loan is not in accordance with the law, including the CARES act, the APA, and the IFR itself. DebtBlue is entitled to a declaration that it did meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020 and it was eligible for the Second Draw PPP Loan and forgiveness of same.

## COUNT TWO

**Claim to Set Aside Agency Action that is Arbitrary, Capricious, Contrary to Law, and Exceeds Statutory Authority under 5 U.S.C. § 706(2)(A), (C)**

52.     Plaintiff incorporates all foregoing factual allegations as if fully stated herein.

53.     The APA authorizes judicial review of federal agency action. 5 U.S.C. § 702.

54.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious," or "an abuse of discretion." 5 U.S.C. § 706(2)(A).

55.     The SBA issued its Initial Decision determining DebtBlue was not eligible for its Second Draw PPP Loan because it did not meet the 25% reduction in gross receipts.

56.     In issuance of the Initial Decision, the SBA relied on the calculation of gross receipts as "including all revenue in whatever form received or accrued (in accordance

with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees or commissions, reduced by returns and allowances." Although the SBA never sought documentation showing returns and allowances, the financial records provided by DebtBlue show "returns and allowances" and support the more than 25% reduction in gross receipts.

57.     Here, DebtBlue's total income for Q2 2019 was $3,169,453.80 and Q2 2020 was $2,444,491.20, representing a 22.9% reduction; however, the returns and allowances were $1,950.50 for Q2 2019 and $141,340.43 for Q2 2020. When returns and allowances are deducted from total income to calculate gross receipts, the gross receipts for Q2 2019 were $3,167,503.30 and Q2 2020 was $2,303,150.77, representing a 27.3% reduction.

58.     Accordingly, the SBA and OHA acted arbitrarily, capriciously, and contrary to law by denying DebtBlue's PPP Loan Forgiveness Application requesting forgiveness of the full amount of the Second Draw PPP Loan. DebtBlue is entitled to a declaration that it did meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020 and it was eligible for the Second Draw PPP Loan and forgiveness of same.

## COUNT THREE

### Postponement of OHA Final Decision

59.     DebtBlue incorporates all foregoing factual allegations as if set forth verbatim herein.

19

60.    On such conditions as may be required and to the extent necessary to prevent irreparable injury, this Court may issue all necessary and appropriate processes to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings. 5 U.S.C. § 705

61.    Pursuant to 5 U.S.C. § 705, to prevent irreparable injury to DebtBlue, DebtBlue requests that this Court temporarily abate or postpone the enforcement of the Final Decision pending judicial review, and direct that the loan deferment for DebtBlue's Second Draw PPP Loan be extended until after final resolution of this action.

## CONCLUSION

Plaintiff DebtBlue, LLC, respectfully requests the Court to provide the following relief:

a.    Declare that the Final SBA Loan Review Decision, issued on January 24, 2024 (Loan Review Decision), the initial decision issued by the OHA on July 1, 2024 (Initial Decision), and the OHA Decision of Appellant's Petition for Reconsideration, issued on August 6, 2024 (Final Decision) are, separately and collectively, arbitrary and capricious, exceed statutory authority, and violate the APA;

b.    Vacate and set aside the Final SBA Loan Review Decision, issued on January 24, 2024 (Loan Review Decision), the initial decision issued by the OHA on July 1, 2024 (Initial Decision), and the OHA Decision of Appellant's Petition for Reconsideration, issued on August 6, 2024 (Final Decision) denying DebtBlue, LLC full forgiveness of its Second Draw PPP Loan;

c.    Declare that DebtBlue did meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020 and it was eligible for the Second Draw PPP Loan and forgiveness of same;

20

d.   Temporarily abate or postpone any loan repayment obligations of DebtBlue as a result of the initial decision issued by the OHA on July 1, 2024 (Initial Decision), and the OHA Decision of Appellant's Petition for Reconsideration, issued on August 6, 2024 (Final Decision) until after final resolution of this action;

e.   Award reasonable attorney fees and costs to the extent permitted by law; and

f.   Grant such other relief to DebtBlue as this Court deems just and proper.

Dated: October 4, 2024.

By: /s/ *David A. Walton*
David A. Walton
Texas Bar No. 24042120
dwalton@bellnunnally.com
Nathan Cox
Texas Bar No. 24105751
ncox@bellnunnally.com
K. Shane Thomas
Texas Bar No. 24126045
sthomas@bellnunnally.com
Bell, Nunnally & Martin, LLP
2323 Ross Ave., Suite 1900
Dallas, TX 75201
Tel. (214) 740-1400
Fax (214) 740-1499

ATTORNEYS FOR PLAINTIFF
DEBTBLUE, LLC

21