IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBTBLUE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-2510-D |
| | § | |
| THE UNITED STATES SMALL | § | |
| BUSINESS ADMINISTRATION, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff DebtBlue, LLC ("DebtBlue") against defendant the U.S. Small Business Administration ("SBA") and related officials,[1] DebtBlue challenges under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the denial of its application for full forgiveness of a Second Draw Paycheck Protection Program Loan. On cross-motions for summary judgment, the court grants defendants' motion, denies DebtBlue's motion, denies DebtBlue's motion for discovery, and enters judgment dismissing this action with prejudice.

---

[1]Isabella Casillas Guzman, in her official capacity as Administrator of the SBA, and Janet Yellen, in her official capacity as United States Secretary of Treasury, were also named as defendants. Under Fed. R. Civ. P. 25(d), they have been automatically replaced by their successors: Kelly Loeffler, in her official capacity as Administrator of the U.S. Small Business Administration, and Scott Bessent, in his official capacity as United States Secretary of Treasury.

I

A

In March 2020 Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub L. No. 116-136, 134 Stat. 281 (2020), which provided emergency assistance for businesses affected by the COVID-19 pandemic. Among other things, the CARES Act established the Paycheck Protection Program ("PPP") by amending § 7(a) of the Small Business Act to authorize the SBA to make forgivable loans to eligible businesses. *See* 15 U.S.C. § 636(a)(36)(B).

After the PPP expired, Congress enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act"), Pub. L. No. 116-260, 134 Stat. 1182 (2020), which authorized the SBA to extend a second round of PPP loans, known as "Second Draw" loans, to eligible small businesses who received a PPP loan under the CARES Act. *See* 15 U.S.C. § 636(a)(37)(B). Eligibility for Second Draw PPP loans was limited to "any business concern" that (1) "employs not more than 300 employees" and (2) can demonstrate at least a 25% reduction in "gross receipts" under comparable quarters in 2019 and 2020. *Id.* § 636(a)(37)(A)(iv).

Section 303 of the Economic Aid Act grants the SBA emergency rulemaking authority. Pursuant to this authority, the SBA issued, on January 14, 2021, an interim final rule ("IFR") that defines "gross receipts," for purposes of Second Draw PPP loan eligibility, as follows:

> Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" . . . plus "cost of goods sold," and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms.

Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3718 (Jan. 14, 2021).

B

DebtBlue is a small debt resolution company located in Addison, Texas. On February 14, 2021 DebtBlue applied for, and received, a Second Draw PPP loan ("Loan") in the amount of $1,144,417.00.

On May 7, 2022 DebtBlue submitted a PPP Loan Forgiveness Application ("Application") to the SBA, requesting forgiveness of the full amount of the Loan. During the review process, SBA requested, and DebtBlue provided, various financial and other documents. On June 21, 2023 and September 13, 2023 the SBA issued preliminary decisions determining that DebtBlue was ineligible for the Loan. DebtBlue promptly responded to each decision, providing additional information as necessary to correct the SBA's misunderstandings or misinterpretations of DebtBlue's financial information and the underlying issues.

On January 16, 2024 the SBA issued its Final SBA Loan Review Decision ("FLRD"). It determined that DebtBlue was ineligible for the Loan because it did not meet the 25% reduction in gross receipts between comparable periods in 2019 and 2020. According to the

- 3 -

SBA:

> [DebtBlue] used an incorrect methodology when calculating [its] reduction in gross receipts.  Per submitted quarterly Profit and Loss Statements, and the loan application . . . [DebtBlue] used Gross Profit instead of Gross Receipts.  The loan application listed 2019 Q2 Gross Receipts as $3,149,843.35 and the 2020 Q2 Gross Receipts as $2,303,150.77.  However, the quarterly Profit and Loss Statements show those numbers are Gross Profit and further reflect 2019 Q2 Gross Receipts as $3,169,453.80 and the 2020 Q2 Gross Receipts as $2,444,491.20, which is a comparative quarterly reduction of 22.9%.

Ds. App. (ECF No. 29-1) at 40.

DebtBlue initiated an administrative appeal of the FLRD.  In its appeal, DebtBlue included the following chart:

### Summary Gross Income / Gross Receipt Exhibit

| | Q2'19 | Q2'20 | Q2'20 Hi/(L) Q2'19 |
|---|---|---|---|
| Total Income | 3,169,453.80 | 2,444,491.20 | (724,962.60) |
| Total Adjustments | 19,610.45 | 141,340.43 | 121,729.98 |
| Gross Profit | 3,149,843.35 | 2,303,150.77 | (846,692.58) |
| | | | -26.9% |

*Id*. at 38. It explained that

> [t]he line item titled "Total Adjustments" are effectively Cost of Goods Sold (COGS) for the period.  The COGS items include charges incurred to directly deliver the income as well as customer refunds.  The COGS are a direct reduction of the income received during the period to run the business including paying employee salaries.

*Id*.  DebtBlue argued that it calculated gross receipts as total income less the "COGS," and

that, following this calculation, DebtBlue met the required 25% reduction in gross receipts.

After DebtBlue initiated its administrative appeal, the SBA Office of Hearings and Appeals ("OHA") issued a notice that, *inter alia*, required the SBA to file the administrative record ("AR"), permitted DebtBlue to serve objections to the AR, and notified the parties that the AR would close concurrently with the SBA's response deadline. After a series of extensions, the AR closed on June 6, 2024.

On July 1, 2024 OHA denied DebtBlue's administrative appeal ("Initial OHA Decision"). Relying on the IFR, OHA explained:

> [i]n calculating a qualifying reduction of gross receipts, the [IFR] definition clearly informed borrowers the only item to be subtracted from gross receipts is a reduction for "returns and allowances." This is emphasized and illustrated in the regulation by noting that if using IRS tax return **terms**, gross receipts would be defined as "total income" plus "cost of goods sold." This added language was intended to further explain gross receipts and to guide borrowers that were intending to show a 25% reduction of gross receipts based on an *annua*[*l*] basis, using annual tax returns, instead of on a quarterly basis, using Profit and Loss Statements.

P. App. (ECF No. 25) at 32. Because DebtBlue relied on its quarterly Profit and Loss Statements, OHA concluded that DebtBlue had incorrectly subtracted "Total Adjustments" (i.e., Cost of Goods Sold) from the "Total Income" (i.e., Gross Receipts) prior to comparing its 2019 and 2020 second quarter gross receipts, and that, in doing so, DebtBlue was actually comparing its 2019 and 2020 second quarter gross profit amounts. *Id.* at 33.

On July 11, 2024 DebtBlue filed a petition for reconsideration ("PFR") of the Initial OHA Decision. In the PFR, DebtBlue acknowledged that, "based on outside guidance, it

- 5 -

previously deducted total costs of goods sold instead of just returns and allowances." *Id.* at 38. DebtBlue then argued, for the first time, that "the vast majority of the costs of good calculation is made up of returns and allowances which are allowed to be deducted when calculating gross receipts," and that "[w]hen only deducting the returns and allowances (rather than the full cost of goods sold), DebtBlue still exceeds the 25% threshold in reduction of gross receipts." *Id.* at 38-39. In support of this argument, DebtBlue included the following chart:

| | Q2 2019 | Q2 2020 | Difference | % Change |
|---|---|---|---|---|
| Total Income | $ 3,169,453.80 | $ 2,444,491.20 | $ (724,962.60) | -22.8734 |
| Returns/Allowances | $ 1,950.50 | $ 141,340.43 | | |
| Gross Receipts | $ 3,167,503.30 | $ 2,303,150.77 | $ (864,352.53) | -27.2881 |

*Id.* at 38. It also attached seven pages of financial documents that it had not previously submitted (and that were not part of the AR), including a Financial Freedom Group LLC Unaudited Profit and Loss Statement ("Revised Profit and Loss Statement") that included a new line item for returns and allowances.[2] *Id.* at 41.

On August 6, 2024 OHA issued its decision denying DebtBlue's petition for reconsideration ("Final OHA Decision"). It rejected DebtBlue's newly-created financial data, which DebtBlue had not previously submitted to the SBA or included as part of the AR.

---

[2]Although the "Returns/Allowances" number for the second quarter of 2020 is the same number as the "Total Adjustments" previously submitted, the "Returns/Allowances" number for the second quarter of 2019 is different, apparently because one of the affiliated entities "had some increased cost of goods sold related to their loan consideration." Hrg. Tr. 10.

The SBA reasoned that "[t]o permit [DebtBlue] to now submit new evidence in its PFR, after the appeal has been decided, would allow [DebtBlue] to circumvent the SBA's administrative review, examination, and verification process." *Id.* at 17. The SBA then identified several inconsistencies in the new financial data, including that there was no indication that the Revised Profit and Loss Statement included the financial data of two of DebtBlue's affiliates; the Revised Profit and Loss Statement included financial data for National Debt Reduction Services, LLC ("NDRS"), but on DebtBlue's PPP worksheet, it indicated that NDRS was "not affiliated"; the financial figures reported in the Revised Profit and Loss Statement did not reconcile with the Freedom Financial Group 2019 tax return reports; and DebtBlue did not record any amount for "Returns and Allowances" or "Cost of Goods Sold" on its 2019 or 2020 tax returns. *Id.* at 17-18. On October 4, 2024 DebtBlue filed the instant lawsuit seeking judicial review of the FLRD, the Initial OHA Decision, and the Final OHA Decision, contending that they are arbitrary and capricious, exceed statutory authority, and violate 5 U.S.C. § 706(2)(A) & (C). DebtBlue and the SBA cross-move for summary judgment. The court has heard oral argument.

## II

"The general 'genuine dispute of material fact' standard for summary judgment does not apply to claims under the [APA]." *Gadhave v. Thompson*, 2023 WL 6931334, at *1 (N.D. Tex. Oct. 19, 2023) (Fitzwater, J.) (citing *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F.Supp.2d 1077, 1084 (E.D. Cal. 2011)). Instead, when "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal."

- 7 -

*Redeemed Christian Church of God v. USCIS*, 331 F.Supp.3d 684, 694 (S.D. Tex. 2018) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  In this context, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Id.* (quoting *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007)).

Under the APA, an agency decision may be reversed by the district court if the plaintiff shows that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).  An agency acts arbitrarily and capriciously if it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Brown v. Napolitano*, 391 Fed. Appx. 346, 349 (5th Cir. 2010) (per curiam) (quoting *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998)).  "A decision is not arbitrary or capricious if the agency considers the relevant factors and 'articulates a rational relationship between the facts found and the choice made.'"  *Willingham v. Dep't of Labor*, 475 F.Supp.2d 607, 612 (N.D. Tex. 2007) (Robinson, J.) (quoting *State of La. ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)).  The party challenging the agency action "has

the burden of proving that the agency's determination was arbitrary and capricious." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010).

III

DebtBlue first contends, under 5 U.S.C. § 706(2)(A), that the SBA and OHA applied an incorrect legal standard because they disregarded the IFR definition of "gross receipts," which expressly requires subtracting returns and allowances.

A

DebtBlue maintains that the SBA's insistence that DebtBlue "used an incorrect methodology" effectively "treat[ed] the inclusion of returns and allowances as improper, when the governing rule required exactly that reduction," and that this constitutes legal error requiring vacatur under § 706(2)(A).[3]  P. Br. (ECF No. 24) at 13.  DebtBlue specifically argues that customer refunds (i.e., returns and allowances) "is part of the cost of goods sold calculation," and that, contrary to the SBA's and OHA's contentions, DebtBlue used the correct methodology and supplied the correct information; that to the extent that the SBA and OHA wanted DebtBlue to segregate out the returns and allowances by category, DebtBlue was not told that beforehand and had no reason previously to segregate out just the calculation of returns and allowances that is incorporated into the cost of goods sold figure; and that, regardless, DebtBlue "immediately provided updated information segregating out

---

[3]Because DebtBlue has failed to establish agency action that violates 5 U.S.C. § 706(2), the court need not address whether the injunctive or other relief that DebtBlue requests is proper.

the returns and allowances and again showed that it met the necessary reduction in gross receipts." *Id.* at 14.

Defendants respond that

> [t]he SBA expressly applied [the IFR definition of "gross receipts," i.e., revenue "reduced by returns and allowances"] in its FLRD, identifying the controlling requirement and explaining that Plaintiff's methodology did not confirm to it [and] OHA applied the same standard on appeal, confirming that the dispositive issue was whether Plaintiff demonstrated a qualifying reduction in gross receipts, not gross profit.

Ds. Br. (ECF No. 28) at 16 (citations omitted).

B

DebtBlue has not shown that the SBA or OHA applied an incorrect legal standard in denying DebtBlue's Application or affirming the denial during the administrative appeal. Under the Economic Aid Act, eligibility for Second Draw PPP loans was limited to businesses that, *inter alia*, "had gross receipts during the first, second, third, or . . . fourth quarter in 2020 that demonstrate not less than a 25 percent reduction from the gross receipts of the entity during the same quarter in 2019." 15 U.S.C. § 636(a)(37)(A)(iv). And the IFR defines "gross receipts" as "all revenue in whatever form received or accrued . . . reduced by returns and allowances." 86 Fed. Reg. at 3718.

In denying DebtBlue's Application, the SBA held that DebtBlue had used an "incorrect methodology" because it calculated its eligibility using "Gross Profits" (calculated by subtracting "Total Adjustments" from "Total Income") instead of "Gross Receipts." Ds.

- 10 -

App. (ECF No. 29-1) at 40.  It is undisputed[4] that eligibility required a 25% reduction in "gross receipts," and that neither the statute nor the IFR permits the use of "gross profits" when comparing revenue reduction on a quarterly basis.

In requiring DebtBlue to demonstrate a reduction in "gross receipts" rather than "gross profits," the SBA and OHA applied the law as written.  Neither relied on any different standard or otherwise applied the law incorrectly.

## IV

DebtBlue next contends that the decisions of the SBA and OHA are arbitrary and capricious under 5 U.S.C. § 706(2)(A) because they fail to consider or rationally address material evidence.

## A

DebtBlue contends that the record reflects that it appropriately satisfied the 25% gross receipts reduction, as required by the SBA and OHA: when "returns and allowances are properly applied pursuant to the IFR," its gross receipts for the second quarter of 2019 were $3,167,503.30 and its gross receipts for the second quarter of 2020 were $2,303,150.77, which is a 27.3% reduction.  P. Br. (ECF No. 24) at 15.  DebtBlue maintains that it submitted extensive documentation of these figures, across the review and appeal, including "detailed financials and clarifying exhibits isolating returns and allowances to conform to the IFR,";

---

[4]DebtBlue agrees that "[t]he controlling IFR, effective January 14, 2021, defines 'gross receipts' as revenue 'reduced by returns and allowances,' and the 25% reduction test compares those gross receipts across comparable quarters."  P. Br. (ECF No. 24) at 13.

that the AR "unequivocally demonstrates" that DebtBlue satisfied the 25% reduction requirement; and that by failing to rationally address or consider the material evidence presented, the SBA and OHA abused their discretion. *Id.*

Defendants respond that the FLRD expressly identified the governing legal requirement and explained why DebtBlue failed to meet that requirement based on the documentation it submitted, i.e., DebtBlue's financial records reflected deductions of costs of goods sold in direct contravention of the regulatory definition of gross receipts, resulting in a methodology that compared gross profits rather than gross receipts; that OHA reviewed the SBA's determination and affirmed it on the same reasoned basis; and that, when DebtBlue sought reconsideration, OHA again articulated its reasoning, explained that the PFR did not identify any clear error of fact or law, and refused to credit post-record submissions.

Regarding the revised financial documents DebtBlue submitted with its PFR, defendants maintain that the AR closed well before DebtBlue submitted these documents; that reconsideration is not a vehicle to reopen the record or submit new evidence that could have been provided earlier; that DebtBlue had been given ample opportunity to support its eligibility *before* the AR closed; and that it was only *after* OHA issued its adverse decision on appeal that DebtBlue attempted to cure the evidentiary defect by submitting revised calculations and explanations.

- 12 -

B

DebtBlue has not established that the SBA or OHA failed to consider or rationally address material evidence in connection with the FLRD or the Initial OHA Decision.

1

The court begins with the FLRD. DebtBlue contends that the AR "unequivocally demonstrates" that DebtBlue satisfied the 25% reduction requirement and that the SBA failed to rationally address or consider the material evidence presented. The court disagrees. DebtBlue did not provide any evidence, prior to the FLRD, that would suggest that the "Total Adjustments" line item in DebtBlue's profit and loss statement included refunds and/or allowances. Nor does it appear that DebtBlue made this argument before the SBA. Instead, DebtBlue provided the SBA financial statements showing "Total Income," "Total Adjustments," and "Gross Profit." P. App. (ECF No. 25) at 35. But as discussed above, these financial figures were insufficient to demonstrate that DebtBlue met the 25% reduction in *gross receipts* requirement.

DebtBlue argued *in the PFR* that it had $141,340.43 in returns and allowances during the second quarter of 2020 and $1,950.50 in returns and allowances during the second quarter of 2019, and that, when these amounts are subtracted from its total income for the respective periods, DebtBlue "exceeds the 25% threshold in reduction of gross receipts." *Id.* at 38. But it is undisputed that the SBA did not have this information before it when it issued the FLRD. As a matter of law, the SBA could not have ignored information that it did not have. And it was not arbitrary and capricious to conclude, based on the information it *did* have—"Total

- 13 -

Income," "Total Adjustments," and "Gross Profit"—that DebtBlue did not satisfy the statutory requirements.

2

During the administrative appeal process, DebtBlue relied on the same financial data that it had previously provided to the SBA, but it clarified, with respect to its profit and loss statement, that

> [t]he line item titled "Total Adjustments" are effectively Cost of Goods Sold (COGS) for the period. The COGS items include charges incurred to directly deliver the income as well as customer refunds. The COGS are a direct reduction of the income received during the period to run the business including paying employee salaries.

Ds. App. (ECF No. 29-1) at 38. Yet DebtBlue *still* failed to provide financial data demonstrating a 25% reduction in "gross receipts." This is because, as OHA explained, "the only item to be subtracted from gross receipts is a reduction for 'returns and allowances.'" *Id*. at 65. DebtBlue neither argued nor established during its administrative appeal that the only item it subtracted from gross receipts was "returns and allowances." Instead, it affirmatively represented to OHA that it had subtracted "Cost of Goods Sold," *id.* at 38, which the statute does not permit. And although DebtBlue represented in its administrative appeal that the "Total Adjustments" figure *includes* customer refunds, it did not specify what portion of the "Total Adjustments" constituted customer refunds (which it was permitted to subtract from its gross receipts) and what portion constituted "charges incurred to directly deliver the income," or "employee salaries" (which it was *not* permitted to subtract).

- 14 -

DebtBlue bore the burden during the administrative appeal process of establishing that the FLRD was based on clear error of fact or law. *See* 13 C.F.R. § 134.1210 ("The standard of review is whether the final SBA loan review decision was based on clear error of fact or law. The appellant has the burden of proof."). OHA determined that DebtBlue had not met this burden, and it explained how it reached this decision:

> Appellant, relying on its quarterly Profit and Loss Statements, incorrectly subtracted "Total Adjustments" (*i.e.*, Costs of Goods Sold) from the "Total Income" (*i.e.*, Gross Receipts), prior to comparing its 2019 second quarter gross receipts with its 2020 second quarter gross receipts. By subtracting its Costs of Goods Sold from its Total Income Appellant was actually comparing its 2019 and 2020 second quarter gross profit amounts. [A]s correctly observed by the SBA, "Appellant utilized an incorrect methodology of comparing "Gross Profit" instead of "Gross Receipts."

P. App. (ECF No. 25) at 33. DebtBlue has not shown that OHA failed to consider material evidence or that its decision to deny DebtBlue's appeal was otherwise arbitrary and capricious.

3

In its briefing and at oral argument, DebtBlue relied heavily on the district court's decision in *Larry Grant Construction v. Mills*, 956 F.Supp.2d 93 (D.D.C. 2013), to argue that SBA acted arbitrarily and capriciously when, without further investigation, it determined that DebtBlue's financial records reflected deductions for cost of goods sold rather than for returns and allowances. DebtBlue contends that

> [t]he SBA never made any attempt to determine what portion of DebtBlue's "Total Adjustments" consisted of returns and allowances versus costs of goods sold. The agency simply equated "Total Adjustments" with "costs of goods sold" and declared DebtBlue ineligible. That is not applying the correct legal standard; it is making an unfounded factual assumption and then penalizing DebtBlue for the agency's own failure to inquire.

P. Br. (ECF No. 30) at 9; *id* at 10 (arguing that the "Total Adjustments" line was "at most, ambiguous regarding how much returns and allowances made up costs of goods," and "[r]ather than asking, the SBA assumed the worst and denied forgiveness.").

In *Larry Grant* the plaintiffs sought judicial review of the SBA's decision that they did not meet the statutory definition of a small business. They argued that the SBA had acted arbitrarily and capriciously when it used an incorrect joint venture dollar figure to calculate the three-year average of their receipts. *Larry Grant Constr.*, 956 F.Supp.2d at 97. Apparently, in one worksheet, an SBA attorney had assumed that one plaintiff's joint venture receipts had not been discounted to 51% (its ownership share in those ventures), but in another worksheet, an SBA analyst had made the contrary assumption. *Id.* The court concluded that the SBA's determination was arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), because the determination

> points to nothing in the record that explains why it assumed [plaintiff]'s joint venture receipts had already been discounted and . . . offers no explanation here. Because the SBA has not "explained the facts," or, more precisely, the assumption "on which it relied," its size determination . . . was arbitrary and capricious.

*Id.* at 98-99.

*Larry Grant* is not binding on this court.  But even if it were, it does not stand for the proposition that an agency must contact applicants to clarify submissions when the record evidence is ambiguous.[5]  Instead, the court in *Larry Grant* held that the SBA had acted arbitrarily and capriciously because it did not explain *why* it chose one assumption (apparently the incorrect assumption) over another.  In the present case, the SBA was not deciding between two conflicting assumptions.  In fact, there was no reason for the SBA to assume that the "Total Adjustments" figure included returns and allowances because DebtBlue neither argued nor produced evidence that it did.  In any event, the SBA provided a clear explanation for its conclusion that DebtBlue had not satisfied the requirements for forgiveness, i.e., because DebtBlue's calculations had used Gross Profits instead of Gross Receipts, which was an incorrect methodology.  And as explained, OHA provided a clear explanation for its denial of DebtBlue's appeal.

C

DebtBlue also has not established that the Final OHA Decision—including OHA's refusal to consider its "newly created financial data"—was arbitrary and capricious.  P. App.

---

[5]As defendants correctly point out, the court did *not* hold, as DebtBlue argues, that "all that the [SBA] needed to do to obtain the correct answer was to phone or email the applicant and ask."  P. Br. (ECF 24) at 1 (alteration in original) (internal quotation marks omitted).  That statement was an argument that the plaintiffs advanced in that case.  *See Larry Grant Constr.*, 956 F.Supp.2d at 97 (quoting plaintiffs' reply brief, which argued that the reason for the differing assumptions was "not clear" from the record, and that "all that the [SBA] needed to do to obtain the correct answer was to phone or email [plaintiff] or [plaintiff's] accounting firm . . . and ask what [the draft statement] numbers reflected." (some alterations in original)).

- 17 -

(ECF No. 25) at 19.

It is undisputed that Debt Blue did not argue or produce evidence that it had $1,950.50 in "returns and allowances" during the second quarter of 2019 and $141,340.43 in "returns and allowances" during the second quarter of 2020 until it filed the PFR, *after the AR closed*. DebtBlue maintains that OHA's refusal to consider its supplemental documentation segregating returns and allowances from costs of goods sold constitutes arbitrary agency action within the meaning of § 706. The court disagrees. Under 13 C.F.R. § 134.1211(c), a request for reconsideration of a final loan review decision "must clearly show an error of fact or law material to the decision." In the Final OHA Decision, OHA explained that DebtBlue had not shown an error of fact or law material to the FLRD based on the *existing* AR. It then determined that the regulations governing the administrative appeal process did not authorize DebtBlue to submit new evidence as part of a PFR after the close of the AR. DebtBlue does not specifically address this conclusion in its briefing, and it appears to the court to be correct.

Under 13 C.F.R. § 134.1209(a), an administrative law judge ("ALJ") "[g]enerally . . . may not admit evidence beyond the administrative record." And under 13 C.F.R. § 134.1209(c), all appeals of final SBA loan review decisions are to be decided "solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record." The procedures for filing and objecting to the AR are set out in 13 C.F.R. § 134.1207. Under § 134.1207(b), the AR "shall include non-privileged, relevant documents that SBA considered

- 18 -

in making its final loan review decision or that were before SBA at the time of the final loan review decision." And § 134.1207(e)(2) permits the appellant, here DebtBlue, to "object to the absence of any document from the administrative record that the appellant believes should have been included in the administrative record." If the appellant objects, the ALJ "may direct or permit that the administrative record be supplemented." 13 C.F.R. 134.1207(e)(3).

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* That standard is met here.

In rejecting DebtBlue's "newly created financial data," OHA provided a reasonable explanation:

> Nothing in the above regulations authorize an Appellant to submit new evidence as part of a [PFR] after the close of the [AR] and after the Initial Decision is issued. It is noted that although [DebtBlue] had the opportunity, it filed no objections, or additions, to the [AR] uploaded by the SBA, and relied upon by the parties during the appeal. Furthermore, the FLRD at issue in this appeal was issued January 16, 2024. For a period of about six months *after* the issuance of the FLRD, [DebtBlue] made no attempt to supplement the [AR] with the new evidence [DebtBlue] is now proffering. Clearly, after the issuance of the FLRD, [DebtBlue] was aware of the SBA's determination, and its explanation, as to how [DebtBlue] incorrectly calculated its 25% reduction in gross income. Yet [DebtBlue] took no action

- 19 -

to supplement the [AR] with new evidence at that time.

P. App. (ECF No. 25) at 17.

DebtBlue's failure to supplement the AR with the evidence it proffered in the PFR is a "satisfactory explanation" for OHA's refusal to consider it. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). After all, although courts may not "supply a reasoned basis for the agency's action that the agency itself has not given," they can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (citation omitted). OHA's "path" in excluding the evidence can reasonably be discerned.

But OHA provided an additional reason for rejecting OHA's new financial data: it appeared to be inconsistent with evidence DebtBlue had previously submitted.[6] OHA explained:

> [t]o permit [DebtBlue] to now submit new evidence in its PFR, after the appeal has been decided, would allow [DebtBlue] to circumvent the SBA's administrative review, examination, and verification process. The SBA would not have the opportunity to question [DebtBlue] about the newly created evidence, to examine the evidence for consistency with [DebtBlue's] other

---

[6]OHA offered the following examples: (1) there is no indication that the Revised Profit and Loss Statement included the financial data of two of DebtBlue's affiliates; (2) the Revised Profit and Loss Statement indicated that financial data for NDRS is included, but on its PPP affiliation worksheet, DebtBLue indicates that NDRS is not affiliated; (3) the Revised Profit and Loss Statement "submitted by Appellant to corroborate a 25% reduction of gross receipts [does] not reconcile with the Freedom Financial Group tax returns"; and (4) "in neither its 2019 nor its 2020 IRS tax return did Freedom Financial Group record any amount for 'Returns and Allowances' or 'Cost of Goods Sold.'" P. App. (ECF No. 25) at 17-18.

> books and records, to verify the accuracy of the nature and amounts of the financial data contained in the new evidence, or to even seek explanations of the new nomenclature now presented by [DebtBlue].

P. App. (ECF No. 25) at 17. Defendants contend that the material discrepancies that OHA identified "not only justify OHA's decision to exclude [DebtBlue]'s post AR submissions but further demonstrate that the Agency's decision was neither arbitrary nor capricious." D. Br. (ECF No. 35) at 10. The court agrees. Because OHA "articulated a rational connection between the facts and the decision made," the court holds that the Final OHA Decision, including the decision to reject DebtBlue's "newly created financial data," was not arbitrary and capricious. *OnPath Fed. Credit Union v. U.S. Dep't of Treasury, Cmty. Dev. Fin. Institutions Fund*, 73 F.4th 291, 296 (5th Cir. 2023) (quoting *Mexican Gulf Fishing Co. v. Dep't of Com.*, 60 F.4th 956, 971 (5th Cir. 2023)).

D

In sum, DebtBlue has not established that the FLRD was arbitrary and capricious. Nor has it established that the Initial OHA Decision or Final OHA Decision was arbitrary and capricious. The SBA and OHA considered the evidence in the AR in reaching their decisions, clearly identified why DebtBlue did not establish eligibility under 15 U.S.C. § 636(a)(37)(A)(iv), and provided a rational basis for not considering DebtBlue's extra-record evidence. "[T]his 'reasoned decisionmaking process . . . [satisfies] the lenient arbitrary-and-capricious standard of review.'" *Nakos v. U.S. Citizenship & Immigr. Servs.*, 2026 WL 2042845, at *7 (N.D. Tex. July 15, 2026) (Fitzwater, J.) (some alterations in original)

(quoting *Visinscaia v. Beers*, 4 F.Supp.3d 126, 135 (D.D.C. 2013)).

V

In its response to defendants' cross-motion, DebtBlue contends that defendants have engaged in bad faith "litigation tactics" that require supplementation of the AR. It also moves for limited discovery into the SBA's representation that it reopened agency review and its subsequent representation that it did not conduct another review of DebtBlue's eligibility for loan forgiveness and did not reopen the AR to consider the additional documentation and information DebtBlue submitted at the SBA's request.

A

DebtBlue filed this lawsuit on October 4, 2024. On December 30, 2024 the parties filed a joint motion to stay, informing the court that the SBA had reopened agency review, that it would request additional documentation and information from DebtBlue, and that upon review of the information, "SBA may withdraw the current [FLRD] and issue a new decision." Joint Motion (ECF No. 12) at 2. On April 29, 2025, and again on August 25, 2025, defendants requested, and the court granted, a continuance of the stay.

During the pendency of the stay, the SBA requested, and DebtBlue provided, additional documentation. But because "the documents provided did not include audited financials for every entity affiliated with the borrower as the SBA requested[,] the SBA did not conduct another review of Plaintiff's eligibility for loan forgiveness." P. Supp. App. (ECF No. 32) at 80. Accordingly, the court lifted the stay and entered a briefing schedule on November 25, 2025.

- 22 -

B

The court begins by addressing DebtBlue's motion for discovery.

1

DebtBlue contends that the SBA has offered no meaningful explanation for why it represented to the court that it would review and potentially reconsider its decision, obtained multiple stays on that basis, collected documentation from DebtBlue, and then failed to conduct the promised review; that the SBA's unexplained about-face and contradictory representations constitute bad faith; and that DebtBlue should be allowed discovery into the extent to which the SBA reviewed documents and why it refused to reopen review of its decision.

Defendants respond that DebtBlue cannot make the strong showing required to justify extra-record discovery and, in any event, the discovery is privileged and irrelevant to the SBA's decision to deny loan forgiveness that is pending before the court.

2

To obtain extra-record discovery from an agency in an APA case, "a party must overcome the standard presumption that the 'agency properly designated the Administrative Record.'" *City of Dallas, Tex. v. Hall*, 2007 WL 3257188, at *6 (N.D. Tex. Oct. 29, 2007) (Solis, J.) (quoting *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 12 (D.D.C. 2001)). "In order to obtain even 'limited discovery,' a party must make 'a significant showing . . . that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Kotha v. Renaud*, 2021 WL 4027697, at *2 (N.D. Tex. May

- 23 -

12, 2021) (Godbey, J.) (quoting *Chiayu Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F.Supp.3d 160, 161 (D.D.C. 2017)).  DebtBlue has not made this showing.

In support of its motion, DebtBlue contends that the SBA acted in bad faith and that extra-record discovery should be allowed because

> SBA offered no meaningful explanation for why it represented to the Court that it would review and potentially reconsider its decision, obtained multiple stays on that basis, collected documentation from DebtBlue, and then simply failed to conduct the promised review.

P. Br. (ECF No. 33) at 9.  But the record undermines these assertions.  As defendants explain in their response, the SBA requested audited documents, received DebtBlue's submissions, and issued follow-up requests seeking clarification.  It then explained in an email to DebtBlue that it had not conducted another review of DebtBlue's eligibility for loan forgiveness because "the documents provided did not include audited financials for every entity affiliated with the borrower as the SBA requested." P. Supp. App. (ECF No. 32) at 80. Far from demonstrating bad faith, the record shows that the SBA requested audited financial documents, reviewed DebtBlue's production, and determined that because DebtBlue had not provided the requested audited financials, the  SBA could not move forward to any substantive reassessment of eligibility.  DebtBlue has failed to make a "significant showing" of bad faith or an incomplete record.  The court accordingly denies its motion for discovery.

C

For largely the same reasons, the court denies DebtBlue's request for supplementation of the AR.  DebtBlue contends that the SBA's conduct in this litigation constitutes bad faith

- 24 -

because, "[i]n addition to the most recent revelation of the SBA reopening review then rejecting any documentation, the record supports supplementation because DebtBlue gave the SBA all its requested documents but the SBA never told DebtBlue to segregate out just the calculation of returns and allowances that is incorporated into the cost of goods sold figure." P. Br. (ECF No. 30) at 8.

Defendants respond that, although the SBA agreed to reopen DebtBlue's file and consider additional documents during the stay of litigation, the purpose of the stay was to determine whether the case could be resolved without judicial intervention; that the SBA requested audited financial statements for DebtBlue and its affiliated entities as a condition of further review; and that DebtBlue has admitted that it did not comply with the SBA's request. Defendants maintain that DebtBlue cannot show that the SBA acted in bad faith during the stay of this lawsuit or during the administrative review process underlying the FLRD and OHA appeals.

The court agrees that DebtBlue has failed to demonstrate that the SBA engaged in bad faith during the administrative process or during the subsequent voluntary reopening of agency review during the pendency of this litigation. Moreover, the SBA's discretionary decision not to conduct another review of DebtBlue's eligibility for loan forgiveness does not constitute "final agency action" reviewable under the APA. 5 U.S.C. § 704. Regardless, the SBA's conduct during the stay of this case—which occurred *after* OHA's decision denying the PFR—is not pertinent to the question being considered, i.e., whether OHA acted arbitrarily and capriciously when it refused to consider materials outside the AR *in deciding*

- 25 -

*the PFR*.  The court has already concluded that it did not.

\* \* \*

Accordingly, for the reasons explained, the court grants defendants' cross-motion for summary judgment, denies DebtBlue's motion for summary judgment and motion for discovery, and enters judgment dismissing this action with prejudice.

**SO ORDERED**.

August 6, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 26 -